**HUMAN RESOURCES INSTITUTE OF NORFOLK, INC., Plaintiff and Defendant on Counterclaim,**

**v.**

**BLUE CROSS OF VIRGINIA, Defendant and Plaintiff on Counterclaim,**

**and**

**The Blue Cross Association, Defendant,**

**Dietrich W. Heyder, M.D., D. W. Heyder, M.D., F.A.P.A., P.C., Fathy A. Adbou, M.D., and Fathy A. Abdou, M.D., F.A.P.A., P.C., Additional Defendants on Counterclaim.**

Civ. A. No. 78–0528–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 8, 1980.

Anthony F. Troy, Stephen A. Northup, George W. Taylor, Jr. and M. Scott Hart, Mays, Valentine, Davenport & Moore, Richmond, Va., for Human Resources Institute of Norfolk, Inc.

Thomas F. McPhaul, Norfolk, Va., for Heyder.

William B. Smith, Virginia Beach, Va., for Abdou.

Gilbert E. Schill, Jr., McGuire, Woods & Battle, with Richard L. Williams, R. Gordon Smith, Anne M. Whittemore and James H. Walsh, Richmond, Va., for Blue Cross of Virginia.

R. Harvey Chappell, Jr., J. Edward Betts, Paul G. Turner, Paul J. Jacobs, II, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for Blue Cross Association.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a proprietary psychiatric hospital serving the Norfolk, Virginia, area, brings this action against Blue Cross of Virginia ("BCV") and The Blue Cross Association ("BCA"), alleging a concerted effort by defendants to force plaintiff either out of the health care business or into becoming a participating hospital in the Blue Cross system, in violation of, *inter alia*, the Sherman Antitrust Act. Plaintiff is one of two hospitals in central and eastern Virginia which is not a Blue Cross participating hospital. As such, plaintiff is reimbursed for inpatient psychiatric care of Blue Cross subscribers only up to limited amounts established by BCV. BCV is a non-profit Virginia corporation which contracts with subscribers to provide prepaid hospital services. BCA is a non-profit Illinois corporation which owns and administers the "Blue Cross" service mark and trade name license and provides other services to the various state and local plans in the Blue Cross system.

Plaintiff, Human Resource Institute of Norfolk, Inc., ("HRI"), alleges that defendants have conspired to monopolize the business of providing prepaid hospital and related service plans in restraint of trade in violation of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. The complaint includes pendent state law claims based upon (1) an alleged combination and agreement by defendants to willfully injure HRI in its reputation in violation of Va.Code § 18.2–499, (2) allegedly slanderous remarks made by BCV concerning HRI, (3) BCV's alleged breach of its contract with HRI, and (4) an alleged violation by BCV and BCA of Virginia's Unfair Trade Practices Act, Va.Code § 38.1–49, *et seq.* The Court's jurisdiction is invoked under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and under 28 U.S.C. §§ 1331(a) and 1337. HRI incorrectly cites the diversity of citizenship between BCA and itself as providing diversity jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction is unavailable here due to the lack of diversity between BCV, a Virginia corporation, and HRI, a Delaware corporation whose principal place of business is Virginia. *See Bowman v. White,* 388 F.2d 756, 760 (4th Cir. 1968).

## I. MOTIONS

BCA has moved for summary judgment in its favor on all counts of the complaint. To the end that the Court may determine the legal sufficiency of plaintiff's claims in the face of BCA's motion, the Court must review the allegations of plaintiff's complaint. As heretofore noted, HRI alleges that the defendants have combined in an effort to force HRI out of business or into the status of a Blue Cross participating hospital. In furtherance of this alleged conspiracy, BCV, movant's codefendant, so it is contended, has refused to process, promptly and properly, claims submitted by HRI for reimbursement for covered hospital services. In addition, HRI contends that BCV has refused to reimburse HRI for covered inpatient psychiatric services rendered to Blue Cross subscribers and has demanded repayment from plaintiff of $3,000,000 paid to HRI for what BCV claims were noncovered services rendered to Blue Cross subscribers. Pursuant to this so called "baseless" demand for repayment, BCV has instituted litigation in state court on such claims. BCV is also alleged to have uttered defamatory statements concerning the quality of psychiatric care provided by plaintiff, in an effort to injure plaintiff's business. Finally, BCV has reduced the coverage for nonparticipating hospitals from 80% to 50% of charges. Although movant BCA did not take any of the aforementioned action, HRI alleges that:

> Defendant BCA has agreed to, encouraged and assisted in the acts and practices of Defendant Blue Cross of Virginia . . . by, among other things, establishing policies and goals supporting said acts and practices.[1]

BCA's motion for summary judgment challenges the evidentiary support for HRI's assertion that BCA assisted codefendant BCV in the manner suggested above.

BCA filed its motion for summary judgment under Rule 56(b) after some eight months of discovery and supported the same with affidavits from two of its vice presidents who detail at length the interrelationships between BCA and its codefendant, BCV. Further documentary support for BCA's motion consists of an appendix of relevant exhibits and a supporting brief. As grounds for judgment in its favor, movant argues that there is no genuine issue of material fact and that the record demonstrates that BCA has not participated in any of the acts complained of nor has it been a party to any combination of conspiracy to commit such acts. In addition, BCA asserts that HRI lacks standing to assert a private cause of action in Count VI under the Virginia Unfair Trade Practices Act, Va.Code § 38.1–49, et seq.; that BCA has not and, in any event, is not in any position to attempt to monopolize the market for inpatient psychiatric hospital services or for prepaid hospital service plans in violation of § 2 of the Sherman Act as alleged in Count II; and that HRI is barred from recovering on claims governed by the Government-Wide Service Benefit Program, 5 U.S.C. § 8901, et seq., for failure to exhaust its administrative remedies.[2]

In response, HRI has filed a brief in opposition, with supporting affidavit and exhibits, and a motion to strike portion of the two affidavits supporting BCA's motion on grounds of noncompliance with the requirements of Rule 56(e), F.R.C.P. Plaintiff argues that BCA's motion is premature due to, what it describes as, the relatively short period of discovery, pointing out that during the fifteen months since this suit was first instituted, discovery has been stayed for nearly half that period. Further, HRI asserts that BCA's failure to file an

---

1. Paragraph 11 of the complaint alleges that BCV and BCA are not alone in this conspiracy, but, rather,

 The participating hospitals which are members of Blue Cross of Virginia, and various others, unknown to plaintiff at this time, have participated with the defendants in the violations alleged in this complaint and have performed acts and made statements in furtherance thereof.

2. BCA also moves for summary judgment on Counts III through VI (pendent state law claims) for lack of subject matter jurisdiction in the event the Court rules in its favor on the federal law claims in Counts I and II.

answer to the complaint until five months prior to the instant motion for summary judgment, has prevented any effective discovery by plaintiff until that time.

While HRI contends that the prematurity of BCA's motion requires its denial, it argues further that the limited discovery conducted thus far has revealed genuine issues of material fact tying BCA with BCV, and others, in a conspiracy and combination as alleged in the complaint. HRI cites, in particular, four documents produced in discovery which purportedly raise inferences of conspiratorial conduct on the part of BCA. These four documents are the Psychiatric Care Manual written by Elon B. Lahar, M.D. ("Lahar Manual"); Medicare Claims Review; Guidelines for Level I Screening; a March, 1975 Total Plan Review of BCV conducted by BCA; and BCA's contract with the United States Civil Service Commission to provide benefits to qualified federal employees under the Federal Employment Health Benefits Program ("FEP Contract").

BCA has submitted a reply brief, in further support of its motion for judgment, which purports to negate any inference of anti-competitive conspiracy from the four documents relied upon by plaintiff. BCA asserts an additional ground for summary judgment in HRI's alleged failure to support its response to the motion with appropriate affidavits as required by Rule 56(e), which provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment if appropriate, shall be entered against him.[3]

Upon consideration of the arguments presented in open Court, as well as the briefs and affidavits in support thereof, the Court concludes that BCA's motion for summary judgment and HRI's motion to strike portions of BCA's affidavits are ripe for disposition. For the reasons which follow, the Court will grant plaintiff's motion to strike in part, and will also grant defendant BCA's motion for summary judgment in its favor.

## II. PROCEDURAL ISSUES

Defendant BCA's motion for summary judgment entails both procedural and substantive issues. The procedural issues include the appropriateness of summary judgment at this pretrial stage, the adequacy of BCA's affidavits in support of its motion; and HRI's alleged failure to support its response with relevant affidavits or other supportive materials.

### A.

The parties have relied upon, respectively, the two United States Supreme Court opinions which form the boundaries of any determination of the appropriateness of summary judgment in private antitrust cases. In opposing BCA's motion, HRI cites *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), in which Mr. Justice Clark, speaking for the Court, suggested that

> [S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.

*Id.* at 473, 82 S.Ct. at 491. *Poller* involved a suit, under § 4 of the Clayton Act, by the owner of a UHF television broadcasting station against CBS to recover treble damages for losses allegedly resulting from the defendant's purchase of a competing UHF station and cancellation of the plaintiff's

---

**3.** The provision allowing response "by affidavits or as otherwise provided in this rule" refers to affidavits in the form set out in subsection (e) of Rule 56, and to depositions or answers to interrogatories which may be used to supplement affidavits or to oppose the adverse party's affidavits. Rule 56(d), Fed.R.Civ.P.

CBS network affiliation. The plaintiff in *Poller* alleged a conspiracy between CBS and others to eliminate UHF broadcasting in Milwaukee and possibly throughout the United States in violation of Sections 1 and 2 of the Sherman Act. In overturning the district court's entry of summary judgment in defendant's favor, the Supreme Court noted that "[t]rial by affidavit" is no substitute for a jury trial where witnesses are present and subject to cross-examination. *Id.; see also Greenville Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974).

BCA, on the other hand, cites *First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), for the principle that, even in antitrust cases, summary judgment is appropriate where the party opposing such motion cannot produce any significant probative evidence of a conspiracy. *First National Bank* involved an antitrust suit against seven large oil companies alleging a conspiracy to boycott Iranian oil in frustration of the plaintiff's ability to sell oil under its contract with the National Iranian Oil Company. After extensive discovery over some eleven years from the filing of the complaint, the trial judge entered summary judgment in favor of Cities Service Co. on the basis of the discovery and pleadings conducted to date. In affirming the entry of summary judgment, the United States Supreme Court addressed the plaintiff's argument that *Poller* precluded summary proceedings in such an antitrust case:

> While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint.

*Id.* at 290, 88 S.Ct. at 1593.

■ Thus, while the nature of the issues present in antitrust suits demand a certain degree of caution in the consideration of summary proceedings, Rule 56 requires entry of summary judgment when the Court finds no genuine issue of material fact to exist. Rule 56 does not provide a timetable for consideration of summary judgment motions, leaving that determination on a case-by-case basis. The timeliness or appropriateness of BCA's motion in the instant case is, therefore, governed not so much by any general rule unique to antitrust cases as it is by the issues presented by the record as developed through discovery conducted to date.

■ The appropriateness of BCA's instant motion for summary judgment also depends upon the nature of HRI's response. Rule 56(f) provides for a response to a Rule 56(b) motion when the party opposing the motion cannot support his response with affidavits, as required by subsection (e):

> (f) *When Affidavits are Unavailable.*
> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In light of the availability, under appropriate circumstances, of additional limited discovery under subsection (f), the Court disagrees that defendant BCA's motion for summary judgment is premature, notwithstanding that discovery has not been completed. *See Groover v. Magnavox Co.*, 71 F.R.D. 638, 639 (W.D.Pa.1976). If, as HRI asserts, additional time for discovery is required to develop evidence showing that there is a genuine issue of material fact for trial, then HRI should have so moved with the filing of an affidavit setting out what might be revealed by further discovery. This HRI has chosen not to do. The Court concludes, therefore, that consideration of BCA's motion for summary judgment at this pretrial stage is appropriate. Additionally, the Court does not consider that the period of active discovery in this cause has been of an unduly short duration. While

good trial lawyers, such as in the instant case, are possessed of inexhaustible ingenuity, it is difficult for the Court to conjure up what further discovery affecting the instant issue could be effective.

### B.

As noted above, BCA filed two affidavits by its executive officers in support of its contention that there is no genuine issue of material fact to be tried. In response, HRI moved to strike portions of both affidavits on the grounds that such portions are not based on personal knowledge as required by Rule 56(e),[4] or constitute statements of ultimate fact and conclusions of law. BCA has responded with a brief in opposition plus supplemental affidavits by the two executive officers in which they affirm that all but a single portion of their affidavits were based upon personal knowledge. Because BCA has relied substantially on affidavits to show the absence of a genuine issue of material fact, the Court must initially rule on plaintiff's motion to strike before addressing the merits of BCA's motion for summary judgment.

In an effort to counter plaintiff's allegation that BCA has supported BCV's actions by the establishment of certain policies and goals, BCA submitted the affidavits of two of its executive officers allegedly responsible for developing and implementing the relevant policies. Bernard Tresnowski was Senior Vice-President, Federal Programs and Health Care Services of BCA, and Executive Vice-President of BCA during the years material to this action. In his affidavit, Mr. Tresnowski detailed at length the obligations of membership in BCA, the approval and performance standards for membership, BCA's involvement in national health programs (Federal Employee Program or FEP, Medicare, and the Civilian Health and Medical Program of the Uniformed Services), and the various supervisory and organizational services that BCA provides to local plans. At several points in his affidavit, Mr. Tresnowski testified to the autonomous nature of the local plans and denied that BCA had encouraged or required BCV to engage in any of the actions complained of or that BCA has agreed, combined, or conspired with BCV to so do. James Gillman, Vice-President of BCA and Director of the Blue Cross and Blue Shield FEP office, addressed by affidavit BCA's nationwide supervision of FEP, a program implemented by the cooperation between the local Blue Cross plans and the United States Government. Mr. Gillman also stated repeatedly that BCA had not refused or conspired to refuse to deal with HRI or its patients.

 HRI's motion to strike alleges that the denials of involvement by BCA's affiants are merely conclusory statements of ultimate fact and law, and do not appear to be based on personal knowledge.

The United States Court of Appeals for the Fourth Circuit has held that the "absence of an affirmative showing of personal knowledge of specific facts vitiates the sufficiency of the affidavits" and summary judgment based thereon would necessarily be improper. *Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972). The Court agrees that several statements by the two affiants are conclusory in nature and merely state ultimate findings favorable to BCA. On the other hand, the Court sympathizes with defendants in antitrust cases where often the best and only means of negating the inference of a conspiracy or agreement is to deny under oath that one existed. This BCA has done, while supplementing the record with facts inconsistent with any agreement or conspiracy. The Court finds that the affiants' supplementary affidavits affirming their personal knowledge of the facts stated in their initial affidavits, coupled with the organization information detailed therein concerning their official duties in the corporation, constitute a sufficient showing of the affiants' personal

---

4. Rule 56(e) provides in pertinent part:

 (e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowl-

edge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

knowledge of the facts referred to in their affidavits. Statements of ultimate fact and conclusions of law will be regarded simply as declarations of each affiant's understanding of the veracity of HRI's allegations, to the best of his knowledge. Where, for example, Mr. Tresnowski or Mr. Gillman have stated that BCA has never agreed, combined or conspired with BCV to do certain things, the Court will simply construe this as a sworn denial that, to the best of the affiant's knowledge, no such agreement, combination or conspiracy has occurred. In addition, the Court will strike those portions of both affidavits which the affiants have admitted in their supplementary filings were not based upon personal knowledge, but were, for example, based upon "information and belief." See Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950).

### C.

A final procedural issue exists in BCA's contention that HRI has not responded to the motion for summary judgment with supporting affidavits, as required by Rule 56(e). The Court assumes that BCA's position is simply that HRI has not submitted an affidavit which "set[s] forth specific facts showing that there is a genuine issue for trial," because HRI did support its opposition to the motion with an affidavit by its administrator and controller who set forth facts underlying HRI's grievances with BCV. Whether this affidavit, accompanied by exhibits, adequately links BCA with BCV in any agreement, combination or conspiracy, goes to the substantive merit of BCA's motion for summary judgment and will be addressed only if the Court finds that BCA has established that no genuine issue of material facts exists. See Greenville Publishing Co. v. Daily Reflector, Inc., supra.

### III. SUBSTANTIVE ISSUES

### A.

As noted, BCA's liability for the action taken by BCV is based on its establishment of policies and goals which allegedly support those actions. BCA bases its motion for summary judgment in large part on its showing that the member plans are autonomous in the area of claims review, and that, therefore, BCA has no control or interest in the denial of claims which is at the heart of this action. In support of this contention, BCA has produced documentation and affidavits setting forth the interrelationship between BCA and its member plans. BCA's evidence shows that, while BCA requires member plans to abide by certain approval standards, each plan may adopt its own standards governing the acceptability of hospitals as contracting hospitals, and is encouraged by BCA to contract with all hospitals that are qualified and equipped to provide the services in the plan's subscriber certificate. In addition, the required licensing agreement between BCA and its member plans states that "provision shall be made for benefits in qualified noncontracting hospitals." BCA has no voice in setting the terms of subscribers' policies with member plans nor in determining whether a subscriber claim should be paid or denied, except under FEP. Under FEP, BCA negotiates with the Civil Service Commission to establish the health benefits for federal employees, without the prior approval of the local plans. In implementing FEP, local plans may secure informal advice from BCA on the proper disposition of a claim, and, should a subscriber appeal the plan's decision to the Commission, BCA provides an independent opinion.

With regard to the factual allegations in HRI's complaint, BCA denies any conspiratorial interaction with BCV and sets forth facts inconsistent with any inference of a conspiracy between the two. HRI alleges that BCV has refused to pay over $143,000 for claims submitted by HRI for Blue Cross "regular" patients and over $242,000 for Blue Cross FEP patients. Of the forty claims comprising these amounts, BCA shows that it has had contact with only six, under FEP appeals. Of those six, BCA recommended that four claims be paid, thus supporting plaintiff's claims for

reimbursement. BCA's affiants deny under oath any knowledge of BCA involvement in or awareness of any combination or conspiracy to refuse HRI's claims, to defame HRI, or to breach any contract with HRI. Finally, Mr. Tresnowski states that BCA was not consulted by BCV when the latter decided to reduce coverage in some of its contracts from 80% reimbursement to 50% for non-participating hospitals.

The Court finds that BCA's showing of facts inconsistent with a conspiracy, coupled with the sworn denials of involvement by BCA's executive officers, are sufficient to shift the burden to the plaintiff to establish the existence of a genuine issue of material fact.

### B.

As the Court has noted, HRI relies on four documents produced in discovery to support an inference of conspiratorial conduct by BCA: the Lahar Manual, the Medicare claims review guidelines, the Total Plan Review, and BCA's FEP contract with the federal government. Although plaintiff apparently relies on the affidavit of its administrator and controller, the Court finds that affidavit to set forth no probative evidence tying BCA with any of BCV's actions, as is necessary in the instant case to conform to the requirements of Rule 56(e).

HRI alleges that BCV used the Lahar Manual, an informational set of claims review guidelines supplied by BCA, to delay and deny claims for psychiatric services, without the knowledge of providers such as HRI. Use of the Lahar Manual has purportedly resulted in strict but unannounced record-keeping requirements for claims review and in manual, rather than automated, review of claims for lengthy periods of hospitalization. Plaintiff cites a sentence from the cover letter of the Manual which states that BCA's Medical Advisory Committee does "strongly recommend that the document be used as training material." HRI argues, in reliance on *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), that such advisory guidelines as the Lahar Manual are suffi-

cient to support a finding of a conspiracy in violation of the Sherman Act. The Court disagrees.

BCA argues that the suggested guidelines contained in the Lahar Manual are purely advisory and not binding in any way on the member plans. In support of this argument, BCA cites portions of the cover letter to the report:

> While developed primarily for use in the Oakland Blue Cross Plan, the Medical Advisory Committee feels that *the document can be a valuable resource for Plans in their own development of psychiatric claims review* Guidelines. . . .
>
> It must be emphasized that *this document represents one Plan's approach to psychiatric claims review. The Manual is only being distributed to Plan physicians and should be subject to their discretion for interpretation and further distribution.* The BCA Medical Advisory Committee does, however, strongly recommend that the document be used as training material for medical review personnel.
>
> *If your plan has developed guidelines for psychiatric claims administration, we would appreciate your forwarding a copy to BCA.* The Manual *and additional input* from other Plans *will be helpful for future development* of a uniform approach to psychiatric claims review within the Blue Cross System.

(Emphasis added). BCA emphasizes that the guidelines were developed by one member plan and that other plans were encouraged to submit or implement other guidelines of their own choosing. In addition, BCA's affiants denied under oath that there was any concerted effort to delay or deny claims for reimbursement for hospital services. "Facing the sworn denial of the existence of conspiracy, it [is] up to plaintiff to produce significant probative evidence . . . that conspiracy existed if summary judgment is to be avoided." *Lamb's Patio Theatres, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1070 (7th Cir. 1978). The Court finds that plaintiff has failed to produce any probative evidence showing that the Lahar Manual was anything more than

a purely advisory set of guidelines. HRI has not produced the statements of anyone connected with BCV or other member plans who claims that the Lahar Manual was binding on the member plans. In fact, HRI has failed to even document the allegation that use of the Lahar Manual resulted in any of the acts complained of.

The guidelines contained in the Lahar Manual are not, in the Court's view, analogous to the minimum fee schedules in *Goldfarb v. Virginia State Bar, supra.* The United States Supreme Court found in *Goldfarb* that the minimum fee schedules were more than advisory guidelines. The Court found that the minimum fees were actually fixed, rigid prices which were binding in practice as evidenced by the fact that every lawyer contacted by Goldfarb adhered to the schedule. Further compulsion was found in published reports and ethical opinions of the Virginia State Bar which indicated that the fee schedules were not to be ignored. 421 U.S. at 777, 95 S.Ct. at 2008. HRI has not produced any evidence from which this Court could find a binding effect of the Lahar Manual similar to the fee schedule in *Goldfarb.*

Similarly, the Court finds no genuine issue of material fact presented by the Medicare claims review guidelines. These guidelines establish three levels of utilization review of Medicare patients' claims. The guidelines state that the goal of "Level I" review is to identify psychiatric cases for referral to "Level II" review—a more involved and lengthy review procedure. HRI relies on these guidelines to show that BCA exercises control over member plans in the review and payment of claims. Initially, Mr. Tresnowski states that these guidelines are advisory as well, and this is unrefuted by HRI. More importantly, however, HRI has alleged no injury arising under Medicare claims, and has suggested no connection between these guidelines and any denial of HRI patient claims. Finally, the guidelines make no distinction between participating and nonparticipating hospitals or between psychiatric hospitals and general hospitals. In the absence of any showing that these Medicare guidelines are relevant

to any of the acts of which HRI complains or that they are not merely advisory but are binding on member plans, the Court is satisfied that these guidelines fail to establish the existence of a triable issue of fact.

HRI relies further on BCA's 1975 Total Plan Review of BCV to show that BCA supports the wrongful denial of claims. In particular, HRI points to the following suggestion contained in the 198-page Review:

> The Plans [BCV-Blue Shield of Virginia] are involved in the educational aspects of utilization review rather than using it to deny payments. The Plans should now move aggressively in the latter direction.

Without more, this statement might substantiate the inference of BCA's support of BCV's denial of claims. However, it is unrefuted by HRI that BCA's Total Plan Review was advisory. Moreover, nothing in this particular suggestion or in the whole Review suggests that psychiatric claims or HRI's claims should be focused upon in this effort. Although the excerpt quoted above remains ambiguous in its import, such ambiguity without more does not constitute the probative evidence necessary to establish a genuine issue of material fact.

Finally, HRI points to the terms of BCA's FEP contract with the federal government which excludes from coverage under basic hospital benefits treatment in a nonparticipating hospital that is primarily a place for treatment of nervous and mental illness. Such terms are said to evidence discrimination against nonparticipating psychiatric hospitals. Assuming for the moment that BCA is party to such discrimination, its co-conspirator or partner in such an effort would be the federal government, not BCV, for whose conduct BCA must be found liable; HRI has not refuted BCA's contention that BCV has no voice in FEP contract negotiations between BCA and the federal government. In addition, the discrimination itself appears illusory in that the FEP contract does provide for supplemental coverage for medically necessary nervous and mental illness charges.

C.

In summary, plaintiff has not borne its burden of producing probative evidence of a conspiracy or even of facts from which an inference of a conspiracy could be drawn. The Court finds that plaintiff has been unable to substantiate its allegations against BCA in the face of facts inconsistent with any unlawful or actionable conduct by BCA. While the Court acknowledges that motive and intent are difficult to establish by antitrust plaintiffs, *Greenville Publishing Co. v. Daily Reflector, Inc., supra* at 398, in the instant case, plaintiff has failed to establish the existence or inference of a conspiracy necessary to make motive or intent relevant. *Lamb's Patio Theatres, Inc. v. Universal Film Exchanges, Inc., supra* at 1070. Rule 56 does not allow plaintiff "to get to a jury on the basis of the allegations in [its] complaint, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations . . . ." *First National Bank v. Cities Service Co., supra* 391 U.S. at 253, 290, 88 S.Ct. at 1593; *Universal Lite Distributors, Inc. v. Northwest Industries, Inc.,* 452 F.Supp. 1206, 1210 (D.Md.1978), *modified,* 602 F.2d 1173 (4th Cir. 1979). In the absence of any probative evidence establishing or inferring a conspiracy or agreement involving BCA and others in restraint of trade or in the commission of any wrongful acts complained of here, the Court will enter summary judgment in BCA's favor on all counts.[5]

The Court finds it unnecessary to address BCA's additional grounds for summary judgment, involving the question of standing under the Unfair Trade Practices Provisions of the Virginia Insurance Code and the question of exhaustion of administrative remedies for denial of FEP claims.

---

**5.** To the extent that HRI asserts a cause of action in Count II against BCA for attempting to monopolize as well as or in the alternative to conspiring to monopolize in violation of Sherman Act § 2, summary judgment is appropriate due to the absence of any evidence of actions taken in such attempt or of any intent on BCA's part to monopolize the business of providing inpatient psychiatric hospital services.