Filed 6/26/24  Neels v. Silver Oak Management CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| SETH NEELS,  Plaintiff and Appellant,  v.  SILVER OAK MANAGEMENT, LLC, et. al.,  Defendants and Respondents. | D082379  (Super. Ct. No. 37-2021-00014832-CU-WT-CT) |

APPEAL from a judgment of the Superior Court of San Diego County, James A. Mangione, Judge.  Reversed.

Downtown LA Law Group and Liliuokalani H. Martin for Plaintiff and Appellant.

The Spangler Firm, Arie L. Spangler; Reden Riddell, Justin G. Reden, Michael J. Riddell and Collin E. Cresap for Defendants and Respondents.

## INTRODUCTION

Seth Neels appeals from the trial court's grant of summary judgment on his claim for wrongful termination in violation of public policy.  Silver Oak Management, LLC (Silver Oak) and Mission Apartments No. 1, LTD

(Mission) (together, defendants) sought summary judgment on a single targeted ground: Defendants contended there was no triable issue of material fact that Neels suffered a "disability" within the meaning of the Fair Employment and Housing Act (FEHA). (Gov. Code,[1] § 12900 et seq.) The trial court agreed. We reverse.

By explicit pronouncement of the Legislature, FEHA's definition of disability is "broad." (§ 12926.1, subd. (b).) It not limited to actual disabilities. (*Ibid.*) It is not coextensive with federal law under the Americans with Disabilities Act (ADA); it provides much "broader coverage." (§ 12926.1, subds. (a), (c).) It is "construed so that applicants and employees are protected from discrimination due to an *actual or perceived* physical or mental impairment that is *disabling, potentially disabling, or perceived as disabling or potentially disabling.*" (§ 12926.1, subd. (b), italics added.) We find triable issues of material fact under this broad definition.

## FACTUAL BACKGROUND[2]

Neels was hired by Silver Oak in April 2018 to be the property manager for Silver Spray Apartments. The property was owned by Mission.

Sometime between March 10 and March 14, 2019, Neels received a work order to fix a heavy door. While fixing it, he felt a sharp pain in his rib

---

[1] Undesignated statutory references are to the Government Code.

[2] As required on appeal from a grant of summary judgment, we recite the evidence in the light most favorable to Neels, the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703.) We also consider all of the evidence submitted by the parties. This is because the trial court overruled all evidentiary objections.

area.  He reported the injury to his supervisors, Kristy McCormick and Garret McCormick.[3]

On March 15, 2019, Neels "started experiencing sharp pains in his abdomen and began urinating blood."  He sought medical treatment, and his physician placed him off work for three days, from March 15 to March 17.  Neels's physician did not know the cause of his injury, but thought he might have pneumonia or a partially collapsed lung caused by the earlier rib injury.  The physician prepared a "Work Status Report," which stated, "This patient is placed off work from 3/15/2019 through 3/17/1019."  Neels told Kristy his doctor directed him to refrain from working for three days, and that the doctor thought he might have pneumonia or a partially collapsed lung.

Neels returned to work on March 18, 2019.  He was still experiencing pain and urinating blood.  He had "issues breathing, . . . mobility issues, limitations [as] to what [he] could lift, stand, and walk."  One week later, on March 25, 2019, Neels told Kristy he was not feeling any better, and "had 2 call 911 last night."  Neels asked if his shifts and job duties could be covered while he spoke with his urologist and scheduled a CAT scan.  Kristy allowed him to attend his medical appointment, but directed him to close the office because she could not find someone to cover.

On March 30, 2019, Neels's doctor placed him off work for another three days, from March 30 through April 1.  The physician prepared a second "Work Status Report," which stated, "This patient is placed off work from 3/30/2019 through 4/1/2019."  The report provided a diagnosis of "gross hematuria," which the parties agree means blood in the urine.

---

[3]     We refer to the McCormicks by their first names.

Neels provided the doctor's work status report to his supervisors.[4] He then had a conversation with Garret and told him that his doctors were unable to determine the cause of the blood in his urine, and that he had been placed off work until April 2, 2019. Instead of allowing Neels to return on April 2, Garret arranged for his position to be covered from April 1 through April 5, and instructed Neels that he could not return to work until he obtained "clearance" from his doctor.

On April 3, 2019, Neels responded to a request for his timecard from Kristy. In a text message, he told her, "I'll text you a copy shortly[.] I just became functional again after that procedure today." Neels also let Kristy know that he was "still treating with [his] doctor."

Defendants terminated Neels two days later, on April 5, 2019.[5]

PROCEDURAL BACKGROUND

Neels sued Mission and Silver Oak. The operative complaint alleges a single cause of action for wrongful termination in violation of public policy.[6] In the complaint, Neels alleged defendants wrongfully terminated him

---

[4]  Defendants claim "there is no evidence [Neels] provided the physician's note to [defendants]." This is not accurate. Neels's declaration states he provided this document to his supervisors. A text message from Neels to Kristy states, "the doctor wrote me a note till [*sic*] the 17th. I'll fax it over when I get back." The note itself indicates it was faxed from "SILVER SPRAY APTS" on "3/15/2019" at "04:09PM."

[5]  In a footnote, with no record citation, defendants claim in their respondents' brief that they had legitimate reasons for terminating Neels. They acknowledge this issue is not relevant to their motion for summary judgment. We thus disregard the assertion.

[6]  The original complaint included five causes of action for violations of FEHA. Neels voluntarily dismissed the FEHA counts for procedural reasons not relevant here.

4

because he had either a "disability or perceived disability." Silver Oak propounded interrogatories directed at both factual theories.

Silver Oak moved for summary judgment, contending that Neels's claim for wrongful termination "fails as a matter of law because [Neels] is not 'disabled' by any legal definition of the term[.]" Mission joined the motion. Defendants' motion did not address any other element of Neels's claim for wrongful termination.

Defendants asserted the only documentary evidence that Neels was disabled was the diagnosis of hematuria in the second work status report. Relying heavily on a federal case that applied federal ADA law, defendants contended that "[Neels's] alleged disability, [h]ematuria (blood in the urine), is not by any definition a legally recognizable 'disability.' " Defendants argued, "[Neels] only suffered from hematuria at the time of his termination. The [Work Status] Reports do not include any restrictions from doctors establishing that accommodations needed to be made for [Neels] to return to work. The only symptom that [Neels] exhibited were bouts of pain, which alone cannot constitute a disability. Based on the general understandings of what a disability is under ADA and FEHA and the representations made by [Neels] and his doctors, there was no legally recognizable 'disability.' "

In opposition, Neels asserted "[t]he ADA has a different standard and definition of what is considered a disability than the FEHA." Neels argued he was suffering from a disability under FEHA's broad definition, which does not require a medical diagnosis. He argued in the alternative, "[a]t a minimum, [d]efendants perceived [Neels] to be disabled," pointing to Garret's refusal to allow him to return to work on April 2, 2019 unless he obtained clearance from his doctor: "If [defendants] did not perceive [him] to be

5

disabled, [Neels] would not have been asked to get a doctor's clearance to be returned to work."

Neels also disputed that the only evidence to support his claim that he had a physical disability was the diagnosis of hematuria in the second work status report. As evidence to support his contention he had a physical disability within the meaning of FEHA, he submitted a declaration.[7] He also submitted the two work status reports, a set of supplemental interrogatory responses prepared by Silver Oak, an excerpt from Garret's deposition, and screenshots of text messages between himself and Kristy.[8]

In reply, drawing again on the ADA definition of "disability," defendants asserted that Neels's injury was not a disability, because it was shown in retrospect to have been "temporary," "undefined," and "a relatively mild aliment when compared to true disabilities[.]" Defendants argued, "[Neels] has provided no evidence that his injury extended past his termination date, and in reality, whatever injury [Neels] had sustained, he no longer suffers from." Defendants did not address Neels's argument that he was perceived to have been disabled.

The trial court granted the motion. It ruled that Neels's alleged injuries did not "rise to the level" of an actual disability as defined by FEHA.

---

[7] Defendants contend Neels's declaration contradicts his interrogatory responses. They do not point to any specific contradiction and we do not observe one.

[8] Defendants claim the "purported recipient" of the text messages has not been identified. This is not accurate. Neels identified Kristy as the recipient of these messages in his declaration, and defendants did not dispute this asserted fact in the proceedings below. As noted, defendants' objections to the statement of undisputed facts were all overruled.

6

The trial court addressed Neels's alternate factual theory he had a qualifying disability based on defendants' perception that he was disabled. The court acknowledged, "FEHA protects against discrimination for 'not only physical impairments that are actually disabling, but also physical impairments that are potentially disabling or are perceived as disabling or potentially disabling.' [Citations.] 'A physical disability is perceived as potentially disabling when an employer regards or treats an employee as having a physical impairment that has no present disabling effect but may become . . . disabling in the future.' " The court resolved the issue, however, based on the " 'substantial[ ] motivat[ion]' " element of FEHA discrimination, an element that had not been identified by defendants for summary adjudication.[9]

This aspect of the trial court's ruling relied on Garret's deposition testimony. Garret testified the reason he told Neels he could not return to work until he had clearance from his doctor was that he "was trying to be accommodating to [Neels] because of the situation" and that he gave him time off "even though the doctors didn't . . . put him on . . . light work duty or anything." The court found, "This is insufficient to create a triable issue of fact as to whether [d]efendants' termination of [Neels] was '*substantially motivated by*' perceived disability discrimination under FEHA." (Italics added.) As noted, defendants did not move on this ground.

---

[9] See *Yau v. Allen* (2014) 229 Cal.App.4th 144, 154 (*Yau*) [explaining that a plaintiff who asserts a common law wrongful termination claim must prove the termination was "substantially motivated" by a violation of public policy].

## DISCUSSION

## I.

### *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his or her causes of action, or that the defendant has a complete defense to each cause of action." (*Nosal-Tabor v. Sharp Chula Vista Medical Center* (2015) 239 Cal.App.4th 1224, 1234 (*Nosal-Tabor*).)

"The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. . . . If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts." (*Sosa v. CashCall, Inc.* (2020) 49 Cal.App.5th 42, 47, citation omitted.)

"In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Nosal-Tabor, supra,* 239 Cal.App.4th at p. 1234 [cleaned up].) Reviewing courts " 'construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' " (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201–1202.) The reviewing court "should draw reasonable inferences in favor of the nonmoving party."

(*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470 (*Miller*), italics omitted.)  "[S]ummary judgment cannot be granted when the facts are susceptible of more than one reasonable inference." (*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1392.)

II.

*Governing Law:  Wrongful Termination in Violation of Public Policy*

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.)  "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau*, *supra*, 229 Cal.App.4th at p. 154.)  The third element of a common law wrongful termination claim—that the termination was substantially motivated by a violation of public policy—can be satisfied by showing a violation of FEHA.  (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1383.)

FEHA makes it an "unlawful employment practice . . . [f]or an employer, because of the . . . physical disability [or] mental disability . . . of any person, . . . to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).)  To establish a prima facie case of disability discrimination, a plaintiff must show:  "(1) *plaintiff suffers from a disability*; (2) plaintiff is a qualified individual; and (3) plaintiff was

subjected to an adverse employment action because of the disability." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236, italics added.)

As noted, defendants' motion was directed at the physical disability element of a FEHA claim. "Physical disability" is defined under FEHA to include "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss" that both (1) affects one or more of the "body['s] systems," including the "musculoskeletal," "genitourinary," and "hemic" systems, and (2) "[l]imits a major life activity." (§ 12926, subd. (m)(1).) The Legislature has specifically found and declared: "The law of this state contains broad definitions of physical disability, mental disability, and medical condition." (§ 12926.1, subd. (b).)

Significant here, under FEHA, "[a] physical disability may be temporary or short term[.]" (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 594 (*Ross*).) FEHA further protects employees not only from discrimination based on an existing physical disability, but also from discrimination based on the employer's perception that the individual has an existing or potential disability. (§§ 12926, subd. (m)(1), (4)(5), 12926.1, subd. (b).) "A physical disability is perceived as potentially disabling when an employer regards or treats an employee as having a physical impairment that has no present disabling effect but may become disabling in the future." (*Ross,* at p. 594, citing Cal. Code Regs., tit. 2, § 11065, subd. (d)(6).)

The meaning of "major life activity" is also "broadly construed" and includes "working." (§ 12926, subd. (m)(1)(B)(iii).) A limit on a major life activity means simply that "it makes the achievement of the major life activity difficult." (*Id.*, subd. (m)(1)(B)(ii).) "Repeated or extended absences from work may constitute a limitation on the major life activity of working." (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 588;

10

*id.* at p. 578 [finding that a series of nine doctor appointments and the possibility of missing more work for surgery limited plaintiff's major life activity of working]; see also *Ross, supra,* 36 Cal.App.5th at p. 595 ["[Plaintiff's] physical impairment limited the major life activity of working because it required [plaintiff] to be absent from work periodically over several months to travel to an out-of-state clinic for medical testing."].)

By contrast, the ADA requires a physical disability to cause a " '*substantial* limitation' " on major life activities in order to meet its definition. (§ 12926.1, subd. (c), italics added; 42 U.S.C. § 12102.) Our Legislature has specifically found and declared that California's definition is broader:

> "The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 [citation]. Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections.

> \* \* \*

> "In addition, the Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the federal Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act." (§ 12926.1, subds. (a), (c).)

## III.

### *Triable Issues of Material Fact on Whether Neels Was Disabled Within the Meaning of FEHA Preclude Summary Judgment*

Neels contends we must reverse summary judgment because there are triable issues of material fact as to whether Neels was actually disabled or

11

perceived to be disabled by defendants within the meaning of FEHA. We agree.

Neels opposed defendant's motion with evidence sufficient to create a triable issue of material fact as to whether, at the time he was terminated, he was in the midst of experiencing an actual physical impairment that had affected his musculoskeletal, genitourinary, and hemic systems over the course of two and a half weeks and interfered with the major life activity of working. (§ 12926, subd. (m)(1).) The evidence was also sufficient to proceed to jury as to whether defendants perceived Neels as having a disability within the meaning of FEHA and "regarded or treated" him as having an actual disability or having a "health impairment that has no present disabling effect but may become a physical disability." (§ 12926, subd. (m)(4)–(5).)

Viewing the evidence in the light most favorable to Neels, as we must, Neels injured his rib to the point where his doctor thought the injury may have caused pneumonia or a partially collapsed lung. He went to the doctor twice because he was urinating blood. He scheduled a CAT scan with a urologist. He was in "a lot of pain." He called emergency services one evening because he was not feeling better. He was diagnosed with "gross hematuria," but doctors "were unable to determine [the] cause of [the] blood in [his] urine." He underwent a medical procedure on April 3, 2019 but was still "treating with [his] doctor" afterward.

At work, Neels had "issues breathing," "mobility issues," and limitations to what he could lift, as well as limitations on standing and walking. He "could not concentrate on [his] work because the pain was so great." He missed work for doctor appointments, including an appointment with a urologist, and his doctor placed him off work for six days.

12

Neels presented evidence defendants were aware of all of the details of his physical impairment, with the possible exception of his breathing, mobility, and pain issues at work (although communication about these issues might be inferred), and that defendants regarded and treated him as if he had an actual or potential disability until they decided to terminate him. Employers are required to engage in good faith with an employee to "determine effective reasonable accommodations" in response to a request for reasonable accommodation by an employee "with a known physical . . . disability." (§ 12940, subd. (n).) Drawing all inferences in Neels's favor, defendants' actions toward Neels were consistent with accommodating him because they believed him to have an actual disability or a physical impairment that had potential to rapidly become disabling.

Kristy allowed Neels to attend a medical appointment even though no one was available to cover his position and she had to close the office. When Garret learned that Neels's doctors were unable to determine the cause of the blood in Neels's urine, he found someone to cover his position for five days, from April 1 to April 5, 2019 and he told Neels he was not allowed to come back to work until he obtained "clearance from [his] doctor." At deposition, Garret specifically testified, "I think I was trying to be accommodating to [Neels] because of the situation."[10]

_____

[10]  We acknowledge Garret's statement can be interpreted more than one way. Neels's original complaint asserted that defendants failed to make reasonable accommodations for his physical disability in violation of section 12940, subdivision (k). Neels accordingly interprets Garret's statement to mean he was "accommodating" Neels's actual, potential, and/or perceived disability in the legal sense of the word. Defendants, by contrast, appear to interpret this statement to mean Garret was "accommodating" Neels solely in the layperson's sense of showing him compassion (and Garret does go on to say, "I think I was just trying to be accommodating to him and be compassionate to [his] situation"). We find Neels's interpretation to be based

13

As noted, our review of the evidence is conducted in the light most favorable to Neels. Defendants submitted no affirmative evidence of their own on these issues to consider. We express no opinion as to whether Neels will ultimately be able to persuade 12 jurors—who will not be constrained as we are by the rules on summary judgment—that he was disabled or perceived to be disabled within the meaning of FEHA.[11]

Defendants' arguments are not persuasive. Defendants argue Neels's condition did not qualify as a disability, because there was no diagnosis by a physician of anything other than "gross hematuria," and that his condition was "a temporary illness, similar to a cold or the flu, neither of which qualify as a disability under FEHA." For support, defendants rely on a federal case, *Brown v. BKW Drywall Supply, Inc.* (S.D. Ohio 2004) 305 F.Supp.2d 814 (*Brown*).

In *Brown,* the court conducted an "individualized inquiry" to assess whether "loin pain hematuria syndrome," qualified as a physical disability

---

on a reasonable inference and we therefore resolve the conflict in his favor in accordance with the standard of review. (Code Civ. Proc., § 437c, subd. (c); *Miller, supra,* 36 Cal.4th at p. 470.)

[11] At oral argument, counsel for defendants argued Neels was not treated as if he had a potential disability, because defendants were entitled to rely on the second doctor's note that cleared him to resume work on April 2 and reasonably did so. A jury may ultimately find this argument persuasive, but as explained, the record supports the conflicting inference that defendants perceived and/or treated him as disabled or potentially disabled. "In the summary judgment context, . . . the evidence must be *incapable* of supporting a judgment for the losing party in order to validate the summary judgment. Thus even though it may appear that a trial court took a 'reasonable' view of the evidence, a summary judgment cannot properly be affirmed unless a contrary view would be unreasonable *as a matter of law* in the circumstances presented." (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877, italics added.)

14

under the ADA. (*Brown, supra,* 305 F.Supp.2d at pp. 823, 817.) According to defendants' interpretation of *Brown*, "The rules may slightly differ between the ADA and FEHA, but the guidance from *Brown* is clear: a temporary injury or illness—specifically pain and hematuria—is not a disability."

We disagree. *Brown* is inapposite based on the Legislature's *specific directive* that FEHA does not follow the ADA's definition of disability. (§ 12926.1, subds. (a), (c); 42 U.S.C. § 12102.) Our high court makes clear that this is a significant distinction, not a slight difference. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1024–1030.) Under FEHA, "[a] physical disability may be temporary or short term[.]"[12] (*Ross, supra,* 36 Cal.App.5th at p. 594.) Accordingly, absent undisputed expert testimony about gross hematuria and Neels's other symptoms, we are unable to say definitively that his condition was "mild" and akin to "the common cold; seasonal or common influenza; minor cuts, sprains, muscle aches, soreness, bruises, or abrasions; non-migraine headaches, and minor and non-chronic gastrointestinal disorders," such that a reasonable jury could not possibly find him disabled. (Cal. Code Regs., tit. 2, § 11065, subd. (d)(9)(B).)

This is also not a case where the plaintiff's asserted symptoms were limited to "pain and numbness [that] did not make work difficult." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 348.) Neels had symptoms other than pain and he attested that the pain he experienced made work difficult.

Finally, relying on *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, defendants argue, "There is . . . no evidence that

---

[12] Defendants quote this exact holding from *Ross*—that a physical disability may be temporary or short term—seven pages earlier in the respondents' brief, but they do not acknowledge it during their discussion of *Brown*.

15

[defendants] were notified that [Neels] was 'disabled.' " In *Avila*, however, the defendant moved for summary judgment on the ground that it "had *no knowledge* of plaintiff's disability and therefore did not terminate him because of that disability[.]" (*Id.* at p. 1245, italics added.) Defendants here did not move for summary judgment on the ground of lack of notice. And in any event, unlike the evidence in *Avila,* Neels did not rely solely on the two work status reports to support his opposition to summary judgment on the physical disability element.

Neels thus met his shifted burden of demonstrating there is a triable issue of material fact on the question of whether he had a physical disability under FEHA. The trial court erred when it granted summary judgment.

DISPOSITION

Judgment is reversed. The trial court is directed to vacate its order granting summary judgment and to enter a new order denying defendants' motion for summary judgment. Costs are awarded to Neels. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


DO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.