[Cite as *Woodbridge v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-891.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Harry Woodbridge,                :

      Plaintiff-Appellant,       :

v.                            :              No. 19AP-321
                                     (Ct. of Cl. No. 2017-00453JD)

Ohio Department of Rehabilitation    :
and Correction,                          (REGULAR CALENDAR)

                               :
      Defendant-Appellee.

                               :

---

D E C I S I O N

Rendered on March 10, 2020

---

**On brief:** *Swope and Swope, Attorneys at Law*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope*.

**On brief:** *Dave Yost*, Attorney General, and *Eric A. Walker*, for appellee. **Argued:** *Eric A. Walker*.

---

APPEAL from the Court of Claims of Ohio

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Harry Woodbridge, appeals from a decision of the Court of Claims of Ohio overruling his objections and adopting the magistrate's decision granting judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). For the reasons which follow, we affirm.

## I. Facts and Procedural History

{¶ 2} At all relevant times, appellant was an inmate housed at the Marion Correctional Institution ("MCI"). On May 17, 2017, appellant filed a complaint against ODRC asserting a claim of negligence and a claim for violation of Title II of 42 U.S.C. 12101

et seq., otherwise known as the Americans with Disabilities Act ("ADA"). The complaint alleges appellant is physically disabled and ODRC failed to provide reasonable bathroom and dormitory accommodations to which he is entitled pursuant to the ADA. The complaint further alleges ODRC was negligent both in failing to provide him "with an ADA accommodation bathroom with securely fastened safety bars, properly cleaned bathroom accessible to Plaintiff" and by "not repairing, maintaining, cleaning, and repairing the unsafe conditions in the non-compliant bathroom." (Compl. at ¶ 7.)

{¶ 3} The events giving rise to the complaint occurred on January 4, 2017 when appellant was using the bathroom in his assigned dorm six. Appellant alleges the bathroom floor was wet, which caused him to fall because there was "no proper grab bar, but simply a loose pipe." (Compl. at ¶ 6.) Appellant further alleges the fall resulted in his sustaining injuries to his "back, neck, head and body." (Compl at ¶ 6.)

{¶ 4} The parties agreed to bifurcate the issues of liability and damages for purposes of trial and, on August 2, 2018, trial on the issue of liability proceeded before a magistrate as scheduled at MCI. Following this portion of the trial, the parties agreed to hold the record open to obtain testimony of additional witnesses. On September 26, 2018, the trial resumed as scheduled at the Court of Claims with appellant appearing by videoconference.

{¶ 5} The following facts relevant to the assignments of error presented for review were adduced at trial and are not in dispute.[1] Appellant was born on June 18, 1945 and has been incarcerated since 2010. He has a history of lymph node cancer and underwent surgery on his neck and shoulder in treatment thereof sometime prior to 2008. Due to the surgery, appellant cannot raise his arm above his shoulder. Appellant also has varicose veins and arthritis in his right knee and right hip. An ODRC Departmental Medical Reclassification form completed in 2013 when appellant was incarcerated at Ross

---

[1] In lieu of filing a transcript of the trial with the Court of Claims, appellant filed an affidavit of evidence pursuant to Civ.R. 53(D)(3)(b)(iii). Because no trial transcript was prepared and/or filed, we relate the facts as set forth in the record via the affidavit of evidence as well as the relevant trial exhibits. *See* App.R. 9(C)(2). We further relate the facts as set forth in the December 17, 2018 decision of the magistrate pursuant to the affidavit of evidence, ¶ 43, wherein appellant attests that he "accepts and incorporates Magistrate Peterson's findings of fact in his decision, in page 1, beginning at paragraph 2, to page 6, first paragraph, excluding any conclusion or finding as to impairment, as if fully recopied herein." ODRC has also indicated it is in accord with "the facts as set forth in the affidavit of evidence [and] as referenced in the decision of the magistrate and the decision and judgment entry of the trial court." (Brief of ODRC at 11.)

Correctional Institution ("RCI") documents appellant's history of lymph node cancer, neck surgery, hypothyroidism, and osteoarthritis of the hip. At the time of appellant's fall that gave rise to his complaint, he ambulated with the aid of a cane.

{¶ 6} Appellant was transferred to MCI on October 24, 2016. Upon his arrival at MCI, appellant underwent a medical examination. Appellant was given a bottom bunk restriction and bottom range restriction and was authorized to use a cane. Appellant was not, however, given an "ADA accommodation" restriction. (Mag. Dec. at 3.) Appellant believed he would be assigned to dorm seven at MCI but was instead assigned to dorm six.

{¶ 7} Appellant protested his assignment to dorm six, complaining it was cold and the restroom had "old style" urinals and always had water on the floor. (Aff. of Evid. at 2.) There was a large fan that ran all the time to dry the floors. In addition to the testimony of appellant, a series of MCI work order requests and the trial testimony of MCI Corrections Officer Lisa Oswald further indicate the restroom in dorm six had multiple issues with condensation and leaking plumbing fixtures, both of which caused water to accumulate on the floor.

{¶ 8} Both Oswald's trial testimony and MCI inmate Lance Brandyberry's deposition testimony indicate inmate porters regularly mopped the bathroom floors in dorm six. Brandyberry further agreed the porters did a "pretty good" job at keeping the floors dry. (Pltf. Exh. 22 at 8.) Oswald also testified orange cones were frequently used to warn of the wet floors, although she did not say whether there were warning cones in the restroom on the day appellant fell.

{¶ 9} MCI Health and Safety Coordinator Steven Harford testified dorm seven is used to house MCI inmates who are disabled or confined to a wheelchair and has an "ADA approved" restroom. (Mag. Dec. at 3.) Harford further testified dorm seven is a coveted dorm and has a larger day room than other dorms and is air conditioned. Harford also testified if an inmate does not have an ADA accommodation restriction but wishes to be assigned to dorm seven, that inmate is placed on a waiting list. Finally, Harford testified when someone makes an ADA accommodation request, a form must be completed and approved by a physician. Harford could not recall whether he informed appellant he needed a physician's approval to receive an ADA restriction.

{¶ 10} Prior to appellant's fall on January 4, 2017, appellant approached several people about being transferred to dorm seven, including MCI Corrections Specialist Teresa Edoja; MCI Corrections Sergeant and Counselor for R unit Anthony Lucki; and MCI Corrections Sergeant and Counselor for buckeye unit (which includes dorm seven) Wendi Griffith. Griffith testified once she received approval from appellant's unit manager (Edoja), she placed appellant's name on a wait list for a bottom bunk in dorm seven.

{¶ 11} On January 4, 2017, appellant went to use the restroom in dorm six. Appellant proceeded to the urinal furthest from the entrance to the bathroom. After appellant was finished using the urinal, he attempted to turn the handle of the pipe to flush the urinal, but the pipe jerked as it was turned off, knocking appellant off balance. As appellant lost his balance, he grabbed the pipe, which was not fastened to the wall, the pipe came loose, and appellant fell to the floor, sustaining injuries.

{¶ 12} Based on the foregoing evidence, on December 17, 2018, the magistrate issued a decision finding appellant had failed to prove his claims by a preponderance of the evidence and recommending judgment be entered in favor of ODRC. Having been granted an extension of time in which to do so, appellant filed his objections[2] on March 14, 2019. In support of his objections, and as ordered by the Court of Claims, appellant also filed an affidavit of evidence in lieu of a trial transcript pursuant to Civ.R. 53(D)(3)(b)(iii).

{¶ 13} Thereafter, on April 11, 2019, the Court of Claims issued its decision overruling the objections and adopting the magistrate's decision. The Court of Claims found appellant failed to prove by a preponderance of the evidence two essential elements of his ADA claim: (1) he was a qualified individual with a disability; and (2) ODRC denied him the benefit of a service, program or activity by reason of disability or that he was otherwise discriminated against because he is disabled. The Court of Claims further found appellant failed to prove two essential elements of his negligence claim: 1) ODRC breached its duty of reasonable care owed to appellant; and 2) any alleged breach was the proximate cause of appellant's injuries. On the same day it issued its decision, the Court of Claims entered judgment in favor of ODRC.

{¶ 14} This timely appeal followed.

---

[2] Appellant filed four objections which we observe are virtually identical to the assignments of error appellant asserts on appeal.

## II. Assignments of Error

{¶ 15} Appellant assigns the following four errors for our review:

[1.] The trial court and the magistrate erred when they ruled plaintiff-appellant did not prove that he has a physical impairment that substantially limits one or more major life activities.

[2.] The trial court and magistrate erred when they ruled plaintiff-appellant failed to prove the defendant-appellee was negligent.

[3.] The trial court and magistrate erred by failing to find the defendant-appellee was negligent in not placing plaintiff-appellant in a dormitory without the constant water problems in 6-dorm bathroom, in a dorm that was ADA compliant, or in a dorm that was dry and safe.

[4.] The decisions of the trial court and magistrate are contrary to law and against the weight of the evidence.

## III. Standard of Review

{¶ 16} As required by Civ.R. 53, the trial court reviews a magistrate's decision de novo. *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-222, 2018-Ohio-3870, ¶ 24, citing *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15. Further, in ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." *Skorvanek* at ¶ 24, citing Civ.R. 53(D)(4)(d).

{¶ 17} "An appellate court, however, reviews a trial court's adoption of a magistrate's decision for an abuse of discretion." *Id.* at ¶ 25*, citing Mayle* at ¶ 15. An abuse of discretion connotes more than an error of law or judgment, "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Claims of trial court error must be based on the actions taken by the trial court itself, rather than on the magistrate's findings. *Skorvanek* at ¶ 25, *citing Mayle* at ¶ 15. Therefore, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily or unconscionably. *Id.* at ¶ 25.

## IV. Law and Analysis

### A. Appellant's First Assignment of Error

{¶ 18} In appellant's first assignment of error, appellant contends the Court of Claims erred when it found appellant failed to prove he has a physical impairment that substantially limits one or more major life activities. We disagree.

{¶ 19} Title II of the ADA applies to state prisons and prisoners, and prisons thus cannot use an inmate's disability as a reason to bar that inmate from participating in or receiving the benefits of recreation, medical services, or education and vocational programs. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). An inmate's claim for damages under Title II of the ADA against a state prison is properly brought in the Court of Claims pursuant to the Court of Claims Act, R.C. Chapter 2743, which created the Court of Claims and invested the Court of Claims with exclusive, original jurisdiction over civil actions against the state for monetary damages.[3] *See State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, ¶ 28.

{¶ 20} To prevail on a claim brought under Title II of the ADA, a plaintiff must show: "(1) that he or she is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendants' services, programs, or activities or was otherwise discriminated against by the defendant, by reason of plaintiff's disability." *Wolfe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-346, 2011- Ohio-6825, ¶ 16, citing *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.); *Thomson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-782, 2010-Ohio-416. In order to demonstrate discrimination based on disability, appellant must demonstrate ODRC denied him a reasonable accommodation and that he requested such an accommodation. *Thomson* at ¶ 26; *Wolfe* at ¶ 16.

{¶ 21} "Under the ADA, a 'qualified individual with a disability' is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.' " *Franks*

---

[3] R.C. 2743.02(A)(1) provides the state "waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the Court of Claims created in this chapter in accordance with the same rules of law applicable to suits between private parties."

at ¶ 19, citing *United States v. Georgia*, 546 U.S. 151, 153-54 (2006), quoting 42 U.S.C. 12131(2). "[A] disability is 'a physical or mental impairment that substantially limits one or more major life activities' of the individual." *Id.* at ¶ 19, citing 42 U.S.C. 12102(1)(A). " 'Major life activities' include, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.' " *Id.*, quoting 42 U.S.C. 12102(2)(A).

{¶ 22} "Several factors should be considered in determining whether an impairment 'substantially limits' a major life activity: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment." *Jurczak v. J & R Schugel Trucking Co.,* 10th Dist. No. 03AP-451, 2003-Ohio-7039, ¶ 23. Furthermore, "[n]ot every physical or mental impairment constitutes a 'disability' within the meaning of the ADA, even though the person may have an impairment that involves one or more of his major life activities." *Sheridan v. Jackson Twp. Div. of Fire*, 10th Dist. No. 08AP-771, 2009-Ohio-1267, ¶ 6, citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-90, (1999) (*overruled on other grounds*); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 564-67, (1999); and *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521, (1999).

{¶ 23} In this case, appellant has identified a myriad of medical issues and conditions from which he suffers and which he argues are "disabilities" as the term is defined under the ADA because they substantially limit one or more major life activities. These medical issues and conditions include his past history of cancer and attendant surgery; his inability to raise his arm above his shoulder, to lift, and to climb into a top bunk; the fact he is elderly; the fact he has arthritis; and the fact he ambulates with the aid of a cane and has difficulty walking to meals and to pill call. Yet, as set forth above, "[n]ot every physical or mental impairment constitutes a 'disability' within the meaning of the ADA, even though the person may have an impairment that involves one or more of his major life activities." (citations omitted.) *Sheridan* at ¶ 6. *See also MX Group, Inc. v. Covington*, 293 F.3d 326, 337 (6th. Cir.2003) ("[I]t is not enough that someone presents evidence of a medical diagnosis of an impairment."). Rather, the burden is on appellant to

prove any one or more of the medical issues and conditions he has identified substantially limit one or more major life activities.

{¶ 24} Initially, we observe and agree with the Court of Claims that some of the activities which appellant argues were substantially limited due to his medical issues and conditions are not "major life activities" as contemplated under the ADA. (Decision at 5.) These include using a top bunk, raising one's arm, and lifting. Further, without additional evidence showing a substantial limitation in the performance of manual tasks caused by appellant's inability to lift his arm, which appellant did not present in the Court of Claims, the trial court correctly determined appellant failed to prove by a preponderance of the evidence his impairments substantially limited the major life activity of performing manual tasks. *See* 42 U.S.C. 12102(2)(A).

{¶ 25} Appellant also argues the major life activity of eating was substantially limited by his difficulty in walking to "chow" and not having enough time to eat. But, as the Court of Claims properly determined, "[t]hese complaints actually concern [appellant's] ability to walk, not his ability to eat or digest food." (Decision at 7.) Therefore, appellant failed to prove by a preponderance of the evidence his impairments substantially limited the major life activity of eating.

{¶ 26} Finally, contrary to appellant's repeated assertions in both the Court of Claims and on appeal, he has failed to establish his difficulty in walking was so severe as to constitute a disability as defined by the ADA. As the Court of Claims aptly observed,

> There is no doubt that plaintiff had an impairment that affected his ability to walk normally. [Appellant's] medical history indicates a sustained difficulty walking long distances without tiring. (Plaintiff's Exhibit 1.) After examining [appellant] upon his arrival at MCI, medical staff gave [appellant] a bottom bunk restriction, bottom level restriction, and a cane restriction, reflecting some difficulty with mobility. However, the medical staff did *not* give [appellant] an "ADA restriction" that would have resulted in [appellant's] assignment to dorm seven.[4]

(Emphasis sic.) (Decision at 8, fn. omitted.)

---

[4] The Court of Claims was also correct in finding that, contrary to appellant's contention the evidence shows he "was to be considered an ADA inmate," this is not an accurate statement. (Aff. of Evid. at ¶ 23.)

{¶ 27} In *Sheridan*, we specifically found "[m]ere difficulty in standing or walking is not sufficient to establish a substantial limitation on the major life activity of walking." *Sheridan* at ¶ 8, citing *Brown v. BKW Drywall Supply, Inc.*, 305 F.Supp.2d 814, 825 (S.D.Ohio 2004). We further noted "[e]ven moderate difficulty in walking may not establish a substantial impairment." *Id.*, citing *Satterly v. Borden Chem., Inc.*, 24 Fed.Appx. 471, 472 (6th Cir.2001) (holding that difficulty walking or having to walk at a slower pace than others failed to establish a substantial impairment). *See also Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (8th Cir.2003) (finding a plaintiff who had the ability to walk only about one-quarter mile before stopping and resting, and whose knee sometimes collapsed, had only moderate, and not substantial, limitations on his ability to walk); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir.1997) ("[M]oderate difficulty or pain experienced while walking does not rise to the level of a disability."). Even the use of a cane will not conclusively establish a substantial limitation of the major life activity of walking. *Curtis v. Humana Military Healthcare Servs.*, 448 Fed.Appx. 578, 581-82 (6th Cir.2011) (plaintiff who used a cane and sometimes leaned on walls to maintain his balance was not substantially limited in his ability to walk). In sum, the Court of Claims correctly found that, although the record shows appellant has difficulty walking, such difficulty does not amount to a substantial limitation on the major life activity of walking.

{¶ 28} Because appellant failed to prove by a preponderance of the evidence, he has a physical impairment that substantially limits one or more major life activities, the Court of Claims did not err in making this determination. Accordingly, we overrule appellant's first assignment of error.

## B. Appellant's Second and Third Assignments of Error

{¶ 29} In appellant's second and third assignments of error, appellant argues, for various reasons, the Court of Claims erred when it found appellant did not prove ODRC was negligent. Accordingly, we consider them together.

{¶ 30} To prevail on a negligence claim, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. *Skorvanek* at ¶ 27, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). The plaintiff has the burden to prove each element of their negligence claim by a preponderance of the evidence. *Skorvanek* at ¶ 27,

citing *Forester v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-366, 2011-Ohio-6296, ¶ 7.

{¶ 31} "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 16. An inmate is also required, however, to use reasonable care to ensure his or her own safety. *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069, ¶ 21. Furthermore, the relationship between a correctional institution and an inmate "does not expand or heighten the duty of ordinary reasonable care." *Franks* at ¶ 12, quoting *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745 (10th Dist.1998). To establish a breach of duty, "the plaintiff must show that the actions giving rise to their injuries were foreseeable by prison officials." *Skorvanek* at ¶ 28, citing *Phelps v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-70, 2016-Ohio-5155, ¶ 13, citing *McGuire v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 96API04-444 (Sept. 30, 1996).

{¶ 32} The extent of the state's duty of care owed to an inmate "necessarily depends upon the circumstances of a case and the foreseeability of injury." *Franks* at ¶ 13, citing *Woods* at 745. Thus, "[a]lthough the state is not an insurer of inmate safety, 'once it becomes aware of a dangerous condition it must take reasonable care to prevent injury to the inmate.' " *Skorvanek* at ¶ 28, quoting *Briscoe v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 02AP-1109, 2003-Ohio-3533, ¶ 20. In addition, if the state knows or should know an inmate has physical limitations or medical conditions, such limitations or conditions should be considered when determining the extent of the state's duty. *See Franks* at ¶ 16 (considering state's duty of care to plaintiff in light of plaintiff's "obviously apparent" physical limitations and "well-documented" medical conditions and restrictions); *see also Bugh v. Grafton Corr. Inst.*, 10th Dist. No. 06AP-454, 2006-Ohio-6641 (considering state's duty of care to plaintiff in light of plaintiff's documented need for medically prescribed footwear).

{¶ 33} Here, the record establishes ODRC knew appellant had physical limitations and medical conditions that impacted his mobility. In addition, the evidence adduced at trial leaves no doubt ODRC was aware the dorm six restroom had recurring issues with water accumulating on the floor, a potentially dangerous condition. Indeed, as discussed

previously, MCI Corrections Officer Oswald sent multiple work order requests to MCI maintenance staff between November 2016 and January 2017 which variously called for repairs of leaking fixtures, showers and sinks that would not turn off, and which reported problems with condensation. This evidence further shows, however, most of the work orders were completed prior to the date of appellant's fall on January 4, 2017, although one was not completed until the day after his fall. Furthermore, there is no evidence in the record that would support a finding ODRC was aware of, or should have been aware of, a defect in the pipe connected to the urinal being used by appellant at the time of his fall.

{¶ 34} Based on the foregoing evidence of the circumstances of this case, the trial court correctly found the duty ODRC owed to appellant was that of reasonable care in light of appellant's mobility issues and the known issues with water accumulating on the floor in the dorm six restroom. The Court of Claims further correctly found appellant did not show ODRC breached its duty of reasonable care in this context. Instead, the evidence adduced at trial demonstrates the MCI staff took affirmative steps to ameliorate the water accumulation issue in the dorm six restroom. These affirmative steps included placing a large fan in the doorway to assist with keeping the floors dry, assigning inmate porters to mop the restroom floors on an hourly basis, and placing orange cones in the restroom to warn inmates when the floors were wet. In addition, as discussed in the above paragraph, MCI staff made repairs of leaking fixtures as requested via the work orders sent by Corrections Officer Oswald. This evidence supports a finding there was no breach of the duty of reasonable care owed to appellant in this case.

{¶ 35} Regarding appellant's third assignment of error in which he asserts the Court of Claims should have found ODRC negligent in not moving appellant from dorm six to a dorm "without the constant water problems in 6-dorm bathroom, in a dorm that was ADA compliant, or in a dorm that was dry and safe," the Court of Claims correctly determined the record did not include sufficient evidence to support this claim. As the Court of Claims pointed out, in appellant's written requests to be transferred to dorm seven, although he indicated his preference for an "ADA bathroom" with "handy cap tolets [sic]" and "showers," he did not express any difficulty with water accumulation on the floor or with using the urinals in the dorm six restroom. (Pltf. Ex. 4 & 6.) Furthermore, appellant testified he regularly used the urinals in the dorm six restroom two or three times a day for

more than two months without falling.  Moreover, the record is utterly devoid of any evidence which shows the accommodations or amenities in the dorm seven restroom in general, let alone with any specificity sufficient to show how appellant's being transferred to dorm seven was necessary based on his medical issues.  Under these circumstances, it was not error for the Court of Claims to find ODRC's duty of care did not require transferring appellant to another dorm.

{¶ 36}  In addition to correctly determining appellant failed to prove ODRC breached its duty of reasonable care, the Court of Claims correctly determined appellant failed to prove any alleged breach was a proximate cause of appellant's fall on January 4, 2017.  Although appellant has fixated on the issue of water accumulation on the bathroom floor, the record does not evince appellant's fall was caused by water on the floor.  Rather, the evidence shows the proximate cause of appellant's fall was the loose pipe connected to the urinal appellant was using.  Indeed, appellant testified that when he proceeded to flush the urinal, the pipe "jerked," causing him to lose his balance.  (Aff. of Evid. at 6.)  It was when appellant grabbed the pipe to try to regain his balance and the pipe came loose that caused appellant to fall to the floor.  As the trial court observed, appellant's testimony on this issue is consistent with the incident report prepared after appellant's fall, wherein it states, "[appellant] fell grabbing the small pipe on the front of the urinal breaking it and pulling it and the hanger off the wall."  (Pltf. Ex. 7.)  Furthermore, the incident report makes no remarks that indicate there was water on the floor.

{¶ 37}  We have already found ODRC did not breach its duty of care with respect to the pipe attached to the urinal because the evidence in the record does not support a finding ODRC was on notice of, or should have been on notice of, a problem with the pipe on the date of appellant's fall.  Nor do we find it reasonably foreseeable a loose pipe on a urinal would cause appellant to fall.  It is hornbook law that foreseeability must be found in order to establish proximate cause.  *Columbus v. Wood*, 10th Dist. No. 15AP-1105, 2016-Ohio-3081, ¶ 11, citing *Mussivand v. David*, 45 Ohio St.3d 314, 321 (1989).  Based on the evidence in the record, it was not error for the trial court to find appellant failed to establish proximate cause.

{¶ 38}  Based on the foregoing, we find the trial court neither erred when it determined appellant failed to prove ODRC breached its duty of reasonable care, nor when

it determined appellant failed to prove the alleged breach was a proximate cause of his injuries. Therefore, it was not error for the Court of Claims to find appellant failed to prove ODRC was negligent, and appellant's second and third assignments of error are overruled.

## C. Appellant's Fourth Assignment of Error

{¶ 39} In appellant's fourth assignment of error, he contends the judgment of the Court of Claims is contrary to law and against the weight of the evidence. The Court of Claims overruled appellant's objection to the magistrate's decision asserting the same, and we agree with the Court of Claims' disposition.

{¶ 40} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct." *Williams v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-720, 2019-Ohio-2194, ¶ 10, citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* "Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact." *Id.* at ¶ 17, citing *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36.

{¶ 41} In overruling appellant's objections and adopting the magistrate's decision as its own, the Court of Claims reviewed the magistrate's decision, the affidavit of evidence filed by appellant, and the trial exhibits admitted into evidence. The Court of Claims held appellant had failed to prove by a preponderance of the evidence he was a qualified individual with a disability and ODRC denied him the benefit of a service, program, or activity by reason of disability or that he was otherwise discriminated against because he is disabled. The Court of Claims further held appellant failed to prove by a preponderance of the evidence that ODRC breached a duty of care it owed to appellant with respect to his fall

that occurred on January 4, 2017, and failed to prove any alleged breach was the proximate cause of his injuries.

{¶ 42} Based on our review of the submitted evidence, and making all reasonable presumptions in favor of the Court of Claims' findings of fact and judgment, and for the reasons set forth in connection with our ruling on appellant's other assignments of error, we conclude competent, credible evidence supports the Court of Claims' decision in favor of ODRC on both of appellant's claims. Accordingly, appellant's fourth assignment of error is overruled.

## V. Disposition

{¶ 43} Having overruled appellant's four assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN & KLATT, JJ., concur.

_____