[Cite as *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2023-Ohio-1382.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ANDRE JENKINS | Case No. 2021-00537JD |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, brought this action claiming that a corrections officer at the Trumbull Correctional Institution (TCI) punched him in the mouth on November 15, 2020. Defendant admitted liability for the use of force but "dispute[d] that any negligence was the proximate cause of any alleged damages." (Pretrial Statement filed Nov. 1, 2022.) The case went to trial before the magistrate.

{¶2} Plaintiff testified at trial that the incident occurred while he was getting ice from an ice machine in a common area of his housing unit at 6:35 a.m. Plaintiff stated that he was not bothering anyone and was not in violation of any prison rules. Plaintiff recalled hearing something behind him and turning in that direction at which point Corrections Officer A. Figueroa struck him once in the mouth with a fist. According to plaintiff, Officer Figueroa had several rings on his fingers, which exacerbated the harmful nature of the contact. Plaintiff identified himself and Officer Figueroa in a surveillance video that recorded the brief incident. (Defendant's Exhibit A.) Plaintiff testified that after returning to his cell and removing the face mask he was wearing due to the COVID-19 pandemic, he discovered blood on the mask and realized his upper lip was cut.

{¶3} Plaintiff explained that he did not want any more problems with Officer Figueroa, so he waited until the second shift officers arrived to report what happened and request medical attention. When he did so, officers escorted him to the segregation unit

and directed him to fill out a Health Services Request form, he stated. Plaintiff felt that he should have been given medical attention immediately but testified that he received none that day.

{¶4} While he was in the segregation unit, plaintiff recalled, 'white shirts' (i.e., corrections supervisors) reviewed surveillance video footage to confirm what he reported. But according to plaintiff, Officer Figueroa and prison officials went against department policy by not treating this as a 'use of force' incident and following the procedure that applies to such incidents. Plaintiff offered into evidence certain department policies relating to the use of force. (Plaintiff's Exhibits 1, 2.) In plaintiff's view, the incident was 'covered up'. Plaintiff stated, however, that TCI Investigator David Ritz met with him about the incident and an Ohio State Highway Patrol trooper did so as well and prepared a report. (Plaintiff's Exhibit 7.) Plaintiff testified that he wished to have criminal charges pressed against Officer Figueroa but the local prosecutor declined to do so.

{¶5} In terms of his physical harm, plaintiff testified that his lip swelled for some time following the incident and continues to swell intermittently, more than two years later. Plaintiff, who did not offer any expert or other medical testimony, feels he sustained nerve damage or some other long-term harm. According to plaintiff, to the extent he has sought medical attention for these ongoing symptoms that he ascribes to the incident, prison medical personnel have told him to take an over-the-counter pain reliever. Plaintiff stated he has not incurred any medical expenses.

{¶6} Plaintiff also described having significant emotional distress over what happened, including constant worrying and feeling he is danger. Plaintiff related that prison officials have placed him on 'suicide watch' six or seven times since the incident and he has gone on multiple hunger strikes. Plaintiff acknowledged that he was already receiving care for multiple mental health issues prior to the incident. Plaintiff testified that he sought for defendant to transfer him out of TCI following the incident and on April 21, 2022, he was transferred to Mansfield Correctional Institution.

{¶7} Plaintiff's testimony also touched on some issues he had with the institutional inspector of TCI in October 2020. While the details were not exactly clear, plaintiff testified that the inspector gave some grievance documents to a unit manager who later permitted or enabled an inmate to see them, thereby jeopardizing plaintiff's safety. According to

plaintiff, the failure to maintain the confidentiality of the grievance documents violated department rules as well as his constitutional rights. It was not apparent that the matter of the grievance documents was directly related to the incident with Officer Figueroa, other than plaintiff characterizing both as examples of policies not being followed.

{¶8} Duane Gibson, R.N. testified that he is employed with defendant as a nurse, and although he now works at a different facility, in 2020 he worked at TCI. Gibson went over his education and professional experience, including having been licensed as a registered nurse in the state of Ohio since 2008 and having worked for defendant since 2013. Gibson explained that his duties at TCI in 2020 included seeing patients at nurse's sick call visits, educating patients, passing out medication and administering preventative medicine such as vaccines, and responding to emergencies. According to Gibson, inmates can access medical care by submitting a Health Services Request form, or if they need emergent care they can ask a corrections officer to summon medical attention.

{¶9} Gibson identified a Medical Exam Report that he prepared and signed, reflecting that he assessed plaintiff on November 15, 2020, at 3:19 p.m. (Defendant's Exhibit B, p. 117.) Gibson had no specific recollection of the exam, and though he initially stated that it probably occurred in the segregation unit, where a corrections supervisor would have been present, on cross-examination he acknowledged that he could not remember where it occurred. Gibson explained that the 'Subjective Evaluation' portion of the Medical Exam Report includes information plaintiff would have provided, in this instance stating that between 6:30 – 7:00 a.m. he was "punched in the face by a corrections officer working my block." Gibson wrote in the 'Objective Physical Findings' portion of the report that plaintiff was alert and oriented, and the inside of the upper lip was red but there was no active bleeding and no other injuries were noted. Gibson testified that if he observed bruising or swelling or a laceration, it would have been his normal practice to document the same. Gibson stated that beyond performing this assessment of plaintiff, he provided no other treatment.

{¶10} Gibson testified that one day later, on November 16, 2020, his coworker at TCI, Betty Mulligan, R.N., prepared another Medical Exam Report reflecting her own assessment of plaintiff that day. (*Id.* at p. 120.) As Gibson related, in the subjective portion again it was documented that plaintiff reported being punched in the mouth by a

corrections officer, and objectively it was noted that plaintiff "pulled up his top lip to show where he had been hit" and there was "[n]o evidence of cut, bleeding, or edema" (i.e. swelling), and no other treatment was administered.

{¶11} Gibson discussed a note that he prepared on November 3, 2020, twelve days before the incident, in connection with seeing plaintiff for a nurse's sick call visit. (*Id.* at p. 123.) As Gibson related, plaintiff's preexisting conditions were noted at that time to include diagnoses of intermittent explosive disorder, antisocial personality disorder, and bipolar disorder for which plaintiff was on the mental health caseload.

{¶12} "Allegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence." *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-804, 2014-Ohio-1810, ¶ 13. "To prove battery, the plaintiff must prove that the intentional contact by the defendant was harmful or offensive." *Miller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-12, 2012-Ohio-3382, ¶ 11. "To prevail on a negligence claim, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Woodbridge v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 19AP-321, 2020-Ohio-891, ¶ 30. "Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being." *Ensman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 06AP-592, 2006-Ohio-6788, ¶ 5.

{¶13} As to the theories of battery and/or negligence, defendant has admitted liability for Officer Figueroa striking plaintiff, leaving to be determined what damages, if any, were proximately caused by the use of force.

{¶14} "'It is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order to be entitled to compensation.'" *Jayashree Restaurants, LLC v. DDR PTC Outparcel LLC*, 10th Dist. Franklin No. 16AP-186, 2016-Ohio-5498, ¶ 13, quoting *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 226, 685 N.E.2d 246 (11th Dist.1996). "As a general rule, the appropriate measure of damages in a tort action is the amount which will compensate and make the plaintiff whole." *N. Coast Premier Soccer, LLC v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 12AP-589, 2013-Ohio-1677, ¶ 17. "[D]amages must be shown with reasonable certainty and may not be based upon

mere speculation or conjecture * * *." *Rakich v. Anthem Blue Cross & Blue Shield*, 172 Ohio App.3d 523, 2007-Ohio-3739, 875 N.E.2d 993, ¶ 20 (10th Dist.).

{¶15} Upon review, the magistrate makes the following findings. On November 15, 2020, at 6:35 a.m. plaintiff was getting ice at the ice machine in a common area of his housing unit. Several other inmates were in the common area at the time. Corrections Officer Figueroa chatted with one of the inmates near the ice machine and gesticulated with his arms and hands, including touching that inmate on the shoulder. After that exchange, Figueroa started walking past plaintiff, whose back was to him, but Figueroa then turned and approached plaintiff from behind. Plaintiff, having heard something behind him, abruptly turned in Figueroa's direction and Figueroa immediately jabbed him in the face with his right fist. Figueroa next put his hand on plaintiff's shoulder and can be seen in the video speaking to plaintiff, seemingly apologizing although there is no audio recording, and as Figueroa then walked away he put up his hands and continued speaking to plaintiff.

{¶16} Plaintiff returned to his cell and upon removing his face mask discovered blood and realized his upper lip had been cut. Having no major injury and not wanting any trouble with Officer Figueroa, plaintiff did not seek any medical attention until later in the day, after the corrections officers' shift change, and when he did so the officers placed him in the segregation unit pending an investigation into the circumstances of his injury. Nurse Gibson's testimony and documentary evidence established that he performed an assessment of plaintiff at approximately 3:19 p.m. that day, at which time the upper lip was red but there was no active bleeding, swelling, or laceration, and no further treatment was needed. While plaintiff denied receiving any medical attention that day, it appears that he did, and even if Gibson's assessment was brief it was not out of proportion with plaintiff's minimal physical injury. The next day, another nurse assessed plaintiff, looked at his upper lip, and found that there appeared to be no cut, bleeding, or swelling, and again no further treatment was needed.

{¶17} In all, it appears more likely than not that plaintiff experienced some pain from being punched in the mouth, sustaining a minor laceration, and experiencing some temporary swelling, although the laceration and swelling were not severe enough to be visible by the time Nurse Gibson saw him nearly nine hours later. While plaintiff thus

established having some physical harm, it was not proven to be severe or long-lasting. Although plaintiff discussed having intermittent swelling and something like nerve damage well over two years later, such long-term or permanent symptoms in these circumstances fall into the category of a complicated medical subject that is outside the ordinary knowledge of a layperson and therefore requires supporting expert testimony. *See Corwin v. St. Anthony Med. Ctr.*, 80 Ohio App.3d 836, 840-841, 610 N.E.2d 1155 (10th Dist.1992) ("Where the permanency of an injury is obvious, such as the loss of an arm, leg or other member, the jury may draw its own conclusions as to the measure of damages; however, where an injury is not obvious, there must be expert evidence as to the damage sustained, the probability of future pain and suffering or the permanency of the injury."); *Schadhauser v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin Nos. 17AP-794, 17AP-795, & 17AP-796, 2018-Ohio-3282, ¶ 11 ("In general, an issue that involves a question of scientific inquiry that is not within the knowledge of [a] layperson is an issue that requires expert testimony to prove.").

{¶18} Plaintiff established that the incident caused him some emotional distress. Plainly it was upsetting to be sucker-punched by a corrections officer who was supposed to care for plaintiff's well-being, and his account of being frightened and worrying that something like this might happen again is understandable. It is not difficult to see how this would have been a disturbing experience and plaintiff has established some measure of emotional harm. But while plaintiff described having far more significant and long-term harm that, according to him, entailed repeated suicidal ideation and refusing to eat, again this is the sort of harm that is too difficult for a layperson to understand in the absence of supporting, explanatory testimony from an expert witness. And while plaintiff was apparently already under the care of mental health professionals, it was not clear that he sought care from them to cope with his feelings about this incident. Still, the magistrate is persuaded that the incident temporarily had a negative effect on plaintiff's emotional well-being to a degree that makes the damages in this case distinguishable from the cases to which defendant compared this one in its closing argument.

{¶19} Accordingly, as to his claims of battery and/or negligence, plaintiff has by a preponderance of the evidence established damages in the form of temporary physical and emotional harm proximately caused by Officer Figueroa punching him. The

magistrate finds that plaintiff is entitled to damages for his temporary pain and suffering in the amount of $3,500.

{¶20} To the extent plaintiff raised a claim of intentional infliction of emotional distress (IIED), this claim requires proof that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosps.*, 78 Ohio App.3d 73, 82, 603 N.E.2d 1126 (10th Dist.1991). From the evidence presented, especially the video, it does not appear Officer Figueroa intended to cause emotional distress nor should he have necessarily known his action would result in emotional distress; rather, his conduct appears to have been an instinctual response to the sudden movement plaintiff made toward him in the unique environment of a correctional institution. Even if unreasonable or unjustified, under the circumstances it was not so extreme and outrageous as to support an IIED claim. And while it has been determined that plaintiff sustained some emotional harm from the incident, from the evidence presented the magistrate is unable to objectively determine that Figueroa's action proximately caused plaintiff the severe, debilitating degree of psychic injury necessary to sustain an IIED claim. Accordingly, plaintiff failed to prove an IIED claim.

{¶21} Finally, regarding plaintiff's contention that TCI's institutional inspector failed to maintain the confidentiality of grievance records in contravention of department policy, violations of internal rules "are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479, 683 N.E.2d 1139 (1997). The violation of an internal policy does not by itself furnish an inmate with a right of recovery. *Wolfe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 15AP-128, 2015-Ohio-3985, ¶ 10. It was not established that any violation of an internal policy on the confidentiality of grievance records was connected to the incident with Officer Figueroa, let alone that there was any causal relationship between the two. And in general plaintiff did not establish that any such policy violation caused him any injury or loss. While plaintiff argued that his constitutional rights were violated, "[i]t is well-established that the Court of Claims lacks subject-matter

jurisdiction over alleged violations of constitutional rights * * *." *Guillory v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin Nos. 07AP-861 & 07AP-928, 2008-Ohio-2299, ¶ 12.

{¶22} Based upon the foregoing, it is recommended that judgment be entered for plaintiff in the amount of $3,500.

{¶23} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


ROBERT VAN SCHOYCK
Magistrate


Filed March 22, 2023
Sent to S.C. Reporter 4/27/23